UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
KEON BRITTON and
RAYMOND JONES,

       Plaintiffs,    15 CV 6710 (JBW) (JO)

  -against-

CITY OF NEW YORK, DEREK
SAMBOLIN, CHRISTOPHER MULLER,  **AMENDED COMPLAINT**
STEVEN FRANZEL, ANTHONY
GONZALEZ, GAMALIER BAEZ, STACEY
ELLIS, SEAN PATTERSON, CHARLES
BARRETT, PATRICK GRANEY, TINA
GUERRERO, EVAN NIELSEN, MICHAEL
O'BRIEN, JORGE SALAZAR, WILLIAM
STEVENS, and JAMES SOUTHERTON,

            **PLAINTIFFS DEMAND**
       Defendants.   **A TRIAL BY JURY**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

    Plaintiffs Keon Britton and Raymond Jones, by their attorneys Lumer & Neville, as and for their Amended Complaint, hereby alleges as follows, upon information and belief:

### PARTIES, VENUE and JURISDICTION

    1.  At all times hereinafter mentioned, plaintiffs Keon Britton and Raymond Jones were adult male residents of Kings County, in the State of New York.

    2.  At all relevant times hereinafter mentioned, defendant City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

3. At all relevant times hereinafter mentioned, each of the following individual defendants were employed by New York City as a member of the NYPD, and each is sued herein in his or her individual and official capacities:

    a. Derek Sambolin (Tax No. 943771);

    b. Christopher Muller (Tax No. 925795);

    c. Steven Franzel (Tax No. 945733);

    d. Anthony Gonzalez (Tax No. 934943);

    e. Gamalier Baez (Tax No. 932287);

    f. Stacey Ellis (Tax No. 946968);

    g. Sean Patterson (Tax No. 921661);

    h. Charles Barrett (Tax No. 923536);

    i. Patrick Graney (Tax No. 920348);

    j. Tina Guerrero (Tax No. 903597);

    k. Evan Nielsen (Tax No. 933096);

    l. Michael O'Brien (Tax No. 916343);

    m. Jorge Salazar (Tax No. 923098);

    n. William Stevens (Tax No. 916752); and,

    o. James Southerton (Tax No. 898569).

4. Upon information and belief, at all relevant times hereinafter mentioned, each of the individual defendants identified in ¶3(a)-(o) were on duty and acting

within the scope of their employment as members of the NYPD.

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

6. Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in the Eastern District of New York, where the plaintiffs and defendant New York City reside, and where the majority of the actions complained of herein occurred.

**RELEVANT FACTS**

7. On April 6, 2013, at or between 6:00 and 7:00 a.m., plaintiffs were lawfully present inside an apartment at 16 Gunther Place in Kings County, New York, where they both resided (the "premises").

8. Plaintiff Britton was present inside one bedroom while plaintiff Jones was present inside another.

9. Two other adult guests were also present inside the premises, as was plaintiff Jones's young child.

10. At or between 6:00 and 7:00 a.m., the plaintiffs were woken by the entry of police officers into the premises.

11. These officers included, upon information and belief, at least some of the individual defendants, including those identified in ¶3(g)-(o).

12. The entry was made pursuant to a search warrant that was obtained by defendant Sambolin based the presentation of false or misleading information to the Hon.

Vincent Del Giudice, who was at all relevant times a Justice sitting in New York State Supreme Court, Kings County, Criminal Term.

13. The application for the warrant was based on allegations that a man named Ralph Hand, described as a black male, six feet tall and 250 pounds in weight, had sold a confidential informant crack cocaine on prior occasions.

14. The defendants seized plaintiffs and their guests at gunpoint at which time the plaintiffs and the other adults present were handcuffed.

15. At or shortly thereafter this seizure, while the plaintiffs and their guests were inside the premises, the other defendants entered the premises.

16. While the plaintiffs and defendants were still in the premises, but after plaintiffs had been handcuffed, one of the defendants displayed a photograph of a black male to the plaintiffs and asked if they knew the man, whom they identified as Ralph Hand.

17. The plaintiffs did not recognize the man in the picture nor the name Ralph Hand.

18. The defendants were well aware at all relevant times prior to and on the date of the arrest that neither plaintiff was Ralph Hand.

19. On two prior occasions within the months leading up to this April 2013 entry, members of the NYPD had come to the premises for the express purpose of locating the same Ralph Hand. On both occasions the plaintiffs allowed the NYPD into the premises to establish that no such person was residing or staying there.

20. Defendant Sambolin, and any other individual defendant involved in

the procurement of the warrant, knew as of April 6, 2013, that Ralph Hand did not reside in or otherwise stay at the premises, that he had no connection to the actual residents of the premises, meaning the plaintiffs, and that the information that was utilized to obtain the warrant was materially false, and thus the warrant was the product of a presentation driven by fabricated or knowingly misleading or unreliable evidence.

21. Not surprisingly, upon information and belief, the defendants did not find Ralph Hand in the premises nor did they find any evidence that Ralph Hand lived in the premises or had been staying or visiting the premises.

22. Equally unsurprisingly, the defendants did not find any crack cocaine, nor did they recover any evidence of any sort that crack cocaine had been or was being sold, either by the plaintiffs or from the premises.

23. Notwithstanding the above, the defendants took plaintiffs (and their adult guests) into custody and transported them to a local area NYPD station house for processing.

24. The defendants lacked probable cause to arrest plaintiffs and it was unreasonable for them to believe probable cause existed.

25. Plaintiffs were detained for a period of time before being transported to Central Booking, where they were held for an additional period of time.

26. While they were in custody, defendant Sambolin created arrest paperwork in which he stated that the defendants had recovered a decorative sword, a machete, a gravity knife, and marijuana from the premises.

27. Certain of these claims were simply false. For instance, there was no marijuana nor gravity knife in the apartment at the time of the arrest.

28. In short, nothing actually found in the premises provided probable cause for the arrest of any of the adults in the premises, including the plaintiffs.

29. At some point following plaintiffs' arrest, while they were in defendants' custody, the office of the Kings County District Attorney ("KCDA") reviewed the paperwork created and forwarded by Sambolin, and interviewed Sambolin about the allegations he had made and the facts and circumstances surrounding the plaintiffs' arrest.

30. Following this review and interview, the KCDA declined to prosecute the plaintiffs and their guests, and released them from custody without ever being charged.

31. The defendants failed to secure plaintiffs' residence following the arrest so that the premises was left visibly open, unlocked, and vacant throughout the day while the plaintiffs were in defendants' custody.

32. As a direct result, the premises was burglarized at some point during the day while plaintiffs remained in defendants' custody.

33. At no time did Sambolin, or any of the other individual defendants, or any other member of the NYPD take any steps to intervene in the plaintiffs' arrest and subsequent incarceration, nor did they file any corrective statements or make any effort of any sort to correct the false statements memorialized by Sambolin or otherwise protect the plaintiffs' from any further harm caused by the knowing violation of their constitutional rights.

34. That at all times relevant herein, the individual defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

35. Plaintiffs repeat the above allegations as though stated fully herein.

36. The individual defendants willfully and intentionally entered the plaintiffs' residence without a lawfully obtained warrant, consent, or exigent circumstances, and searched the plaintiffs and the premises without lawful authority.

37. The individual defendants seized and arrested plaintiffs, and caused them to be imprisoned without sufficient legal cause, and without a reasonable basis to believe such cause existed, or otherwise failed to intervene in such conduct by their fellow defendants.

38. By so doing, the individual defendants subjected the plaintiffs to false arrest and imprisonment, and unlawful searches of their person and property, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

39. By reason thereof, the Doe defendants have violated 42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, the loss of their personal belongings, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

40. Plaintiffs repeat the allegations contained in the preceding paragraphs above as though stated fully herein.

41. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

42. Defendants had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

43. The defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol

8

Guide, up to and beyond the plaintiff's arrest.

44. For example, numerous lawsuits have been filed in the United States District Court for the Eastern District of New York alleging that defendants Sambolin, Muller, Franzel, Baez, Gonzalez, and Ellis have, individually or jointly, deliberately violated the constitution during the course of their employment with the NYPD.

45. These cases are but a small, small drop in the ocean of civil rights cases against members of the NYPD in which plaintiffs are claiming that they were falsely arrested and imprisoned or prosecuted based on fabricated evidence, or otherwise sufficiently maltreated by police officers as to violate the federal constitution.

46. Such lawsuits have provided more than ample notice to the municipal defendant that the NYPD has, at a minimum, been deliberately indifferent to the misconduct of its officers, and that such a profound failure to supervise has tacitly ratified and authorized such past, present, and future behavior.

47. More generally, according to an article in New York Magazine, dated October 10, 2014, the City of New York issued a report reflecting that it paid an average of $33,875 per case to resolve well over 10,000 cases between 2009 and 2014, and that figure did not take into account filed cases that were still pending when the report was compiled. Similarly, the City Comptroller has reported that the City of New York's payments to resolve allegations of misconduct by members of the NYPD had risen from $99 million to $217 million in between 2005 and 2014, as stated on Page 2 in the Comptroller's August 2015 report at http://nylawyer.nylj.com/adgifs/decisions15/083115claims.pdf. While such numbers relate to the NYPD as a whole, they reflect that the City had actual knowledge that

9

its police department was routinely engaging in unconstitutional and unlawful conduct, at least some of which can be attributed to a strict quota policy that compelled officers to focus on the quantity of their arrests at the expense of making good arrests.

48. In October 2011, following a criminal bench trial in New York Supreme Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he described as a "widespread culture of corruption endemic in its drug units." The judge further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a "cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of misconduct but even more distressingly by the seeming casualness by which such conduct is employed."

49. In an Order dated November 25, 2009, in *Colon v. City of New York,* 09-CV-0008 (E.D.N.Y.), the Hon. Jack B. Weinstein stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration -- through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department -- there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

50. It is thus manifestly clear through the litigation brought in the Eastern

and Southern Districts of New York, as well as the many cases filed in New York's State courts, that thousands of civilians have alleged that members of the NYPD have deliberately arrested them without probable cause. Thus, even if the municipal defendant was not the architect of the policies and routinized conduct causing these unlawful arrests, it was certainly on notice of the practice, and by failing to take any meaningful corrective steps, has ratified, endorsed, or otherwise communicated its acceptance of this policy to the officers it employs.

51. Rather than take meaningful steps to reduce and eliminate such misconduct by its officers, the City of New York and the NYPD have instead affirmatively announced a renewed commitment to defending such misconduct. In an article in the New York Times on February 4, 2016, the link to which is http://nyti.ms/1nPv0mO, the City proudly announced that the NYPD had "created a new 40-member legal unit that develops evidence that the Law Department can use to defend lawsuits against the police, and the [Law Department] hired about 30 lawyers to bolster its litigation teams and to try more cases in court." According to this article, these steps were warmly received by police union leaders.

52. The City's stated response to the wave of litigation caused by misconduct on the part of the NYPD is thus directed not at the deliberate and frequent constitutional violations underlying the consequential litigation, but rather at defending such misconduct so that officers can continue to engage in unconstitutional conduct without fear of being sued or held accountable. In so doing, the City has dispensed altogether with any

pretense that such misconduct is not sanctioned, ratified, or otherwise endorsed by the City of New York and the NYPD's executive leaders and supervisory personnel.

53. It is therefore clear that the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York, at the bare minimum, has been on notice of, and remained deliberately indifferent to, the fact that many of its officers have routinely engaged in unconstitutional conduct, and this failure to supervise and oversee its staff has led, and continues to lead to the violation of individuals' constitutional rights in general, and the violation of plaintiffs' rights in particular.

54. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of his constitutional rights.

**[Remainder of page intentionally blank]**

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

    i.    on cause of action one, actual damages and punitive against each of the individual defendants, in an amount to be determined at trial;

    ii.    on cause of action two, actual damages against the municipal defendant, in an amount to be determined at trial;

    iii.    statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

    iv.    such other relief as the Court deems just and proper.

Dated:   New York, New York
           April 2, 2016

                                      LUMER & NEVILLE
                                      Attorneys for Plaintiff
                                      225 Broadway, Suite 2700
                                      New York, New York 10007
                                      (212) 566-5060

                        By: _____
                                      Michael B. Lumer (ML-1947)